DOUGLAS J. MELTON, Bar No. 161353
SHANE M. CAHILL, Bar No. 227972
JONATHAN RIZZARDI, Bar No. 244784
LONG & LEVIT LLP
465 California Street, 5th Floor
San Francisco, California  94104
Telephone:     (415) 397-2222
Facsimile:     (415) 397-6392
Email:         dmelton@longlevit.com
               scahill@longlevit.com

Attorneys for Defendants
DÉJÀ VU – SAN FRANCISCO, LLC; DÉJÀ VU SERVICES, INC.; DÉJÀ VU SHOWGIRLS OF SAN FRANCISCO, LLC; AND, DÉJÀ VU SHOWGIRLS – SACRAMENTO, LLC

Specially Appearing for Defendants
DÉJÀ VU – HIGHLAND PARK, LLC; PINE TREE ASSETS, INC.; AND, DÉJÀ VU, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELAINE P. GOMEZ-ORTEGA,<br><br>Plaintiff,<br><br>v.<br><br>DÉJÀ VU – SAN FRANCISCO, LLC, a Nevada limited liability company DÉJÀ VU, INC., a Nevada corporation; DÉJÀ VU SERVICES, INC., a Michigan corporation; PINE TREE ASSETS, INC., a Michigan corporation, DÉJÀ VU SHOWGIRLS OF SAN FRANCISCO, LLC, a Nevada limited liability company, DÉJÀ VU SHOWGIRLS – SACRAMENTO, LLC, a Nevada limited liability company; DÉJÀ VU – HIGHLAND PARK, LLC, a Nevada limited liability company, and DOES 1 through 50, inclusive.<br><br>Defendants. | Case No.  3:17-cv-06971-LB<br><br>*Related to:*<br>Case No.  3:14-cv-03616-LB<br><br>**DECLARATION OF DOUGLAS J. MELTON IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND FOR STAY OF PROCEEDINGS OF DEFENDANTS DÉJÀ VU – SAN FRANCISCO, LLC AND DÉJÀ VU SHOWGIRLS – SACRAMENTO, LLC**<br><br>Date:           March 8, 2018<br>Time:           9:30 a.m.<br>Courtroom:      C, 15th Floor<br>Judge:          The Hon. Laurel Beeler |

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

CASE NO.: 3:17-CV-06971-LB
DECLARATION OF DOUGLAS J. MELTON

I, Douglas J. Melton, declare:

1. I am an attorney with the law firm Long & Levit LLP, defense counsel of record in this action. I am licensed to practice before all the Courts of the state of California as well as the U.S. District Courts located in California. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto.

2. On December 11, 2017, my office sent a letter to Plaintiff's counsel conveying Defendants' demand that Plaintiff agree to submit any and all claims she has to binding arbitration, alerting Plaintiffs' counsel to the arbitration agreement, and providing counsel with a copy thereof. Attached hereto as Exhibit 3 is a true and correct copy of the referenced correspondence. In response, Plaintiff's counsel indicated he intended to file a first amended complaint, which was filed on January 8, 2017. The filing of the first amended complaint extended Defendants' responsive pleading deadline to January 22, 2018.

3. On January 17, 2018, my office sent a letter to Plaintiff's counsel, again demanding that Plaintiff agree to submit any and all claims she has against Defendants to binding arbitration. The correspondence further outlined reasons why this Court lacked jurisdiction over other named Defendants, and requested that they be dismissed. Attached hereto as Exhibit 4 is a true and correct copy of the referenced correspondence. Despite having a productive rapport with Plaintiff's counsel to date, I did not receive a response to my January 17 correspondence prior to the filing of this motion or the other motions concurrently filed by Defendants.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct and that this declaration was signed at San Francisco, California on January 22, 2018.

/s/ Douglas Melton
_____
DOUGLAS J. MELTON

DOCS\S0301-296\854363.1

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

1

CASE NO.: 3:17-CV-06971-LB
DECLARATION OF DOUGLAS J. MELTON

# Exhibit 3

# LONG & LEVIT LLP

ATTORNEYS AND COUNSELORS AT LAW

Douglas J. Melton  
*Partner*

dmelton@longlevit.com  
Direct Dial: 415-438-4493

December 11, 2017

S0301.296

**VIA E-MAIL AND U.S. MAIL**

Shaun Setareh  
H. Scott Leviant  
Setareh Law Group  
9454 Wilshire Blvd., Suite 907  
Beverly Hills, CA 90212

Re: *Gomez-Ortega v. Déjà vu – San Francisco, LLC, et al.*, Case No. 3:14-cv-03616

Greetings:

Defendant DÉJÀ VU – SAN FRANCISCO, LLC ("Defendant") hereby demands that Plaintiff Elaine Gomez-Ortega ("Plaintiff") submit any and all claims she has against Defendant—including those alleged in her complaint in the above-referenced litigation—to binding arbitration. Defendant also demands that Plaintiff dismiss the above-referenced litigation as arbitration is the exclusive forum for resolution of all claims and causes of action in the Complaint.

This demand is based on Plaintiff's enclosed, fully executed 2017-2018 Club/Performer Contract. The contract contains an unambiguous, broadly worded arbitration provision covering "All disputes between the parties," as well as a delegation clause. Plaintiff signed the contract, and specifically initialed the provision agreeing to resolve her dispute by binding arbitration.

Please advise by close of business Tuesday, December 12, 2017 whether Plaintiff will agree to submit to arbitration and dismiss her lawsuit. If we do not hear from you, or should Plaintiff refuse, we will file a motion to compel arbitration for the Court's determination.

Very truly yours,

Douglas J. Melton

Enclosure

## 2017-2018 CLUB/PERFORMER CONTRACT

Sign this Contract ONLY if you genuinely agree with its terms. Read and consider it, seek the advice of counsel or a person you trust to assist you. ALSO, BEFORE SIGNING, CONSIDER OWNER'S SEPARATE OFFER OF EMPLOYMENT.

OWNER, DÉJÀ VU-SAN FRANCISCO, LLC ("Owner") operates a business authorized under zoning and licensing laws to permit nude or semi-nude entertainment on its' premises, and PERFORMER ("Performer") is in the business of and holds required licenses or permits to market her adult oriented entertainment, and requires a venue which lawfully permits such entertainment, and

THE PARTIES desire to establish the terms of a mutually beneficial business relationship including the Division of Gross Revenue from such entertainment.

THEREFORE, the Parties agree as follows:

I. **TERM.** This Contract begins on signing and ends JANUARY 31, 2018 or when terminated as provided herein.

II. **DEFINITIONS:**

A. **"Bill Acceptor Machines or Collection Boxes."** The Machines are money acceptors located at each booth and the Collection Boxes are receptacles issued by Owner for the collection of Dance Fees from patrons to ensure that Dance Fees are segregated and distinguished from "tips."

B. **"Personal Dances"** are non-stage dances performed individually and sold to a patron for a set Dance Fee.

C. **"Dance Fees"** are the non-gratuitous set price for Personal Dances. These fees are MANDATORY CHARGES to the patrons as the price for a Personal Dance. They are NOT tips or gratuities.

D. **"Gross Revenue"** is the total Dance Fees and other sales attributable to Performer. Gross Revenue does not include Tips or Gratuities.

E. **"Tips"/"Gratuities"** are the amounts over and above the Dance Fee, voluntarily given by a patron and handed directly to Performer; they are the exclusive property of Performer.

F. **"Schedule"** is an open calendar which owner will publish every Sunday at opening for Performer's selection of desired Performance Dates.

G. **"Scheduled Performance Date"** is a date on which Performer has chosen to place herself on the schedule one week in advance.

H. **"Full Performance Date"** is a continuous period of time when Performer is present, available and ready to perform; which time period consists of at least SIX hours.

I. **"Good Standing"** means a Performer who is NOT in breach of her contract, and whose contract has been kept "active" in the system by performing at least one Full Performance Date in the current month.

III. **BREACH OF CONTRACT**

A. Breach of Contract by Performer:

- Violating the law including laws on drugs, alcohol, soliciting or engaging in prostitution;
- Allowing patrons to pay Dance Fees to you directly, i.e., by failing to require patrons to deposit Dance Fees directly into Bill Acceptor Machines or Collection Boxes or hand them directly to a club employee;
- Failing to use your best efforts to sell Personal Dances;
- Failing to appear on and complete a Performance Date you chose to schedule, and
- Engaging in fighting and/or bullying.

B. Breach of Contract by Owner includes failure to maintain appropriate licenses and permits, failure to advertise in a mutually beneficial manner, and failure to pay performer her contract Division of Gross Revenues.

C. Breach Notice/Remedies. In the event of a Material Breach, the non-breaching party may (a) impose paragraph IV(B)iii Reduced Division of Gross Receipts (if the breaching party is Performer), or demand Premium Division of Gross Receipts (if the breaching party is Owner) OR (b) terminate the Contract on 3 days written notice or in the case of drug, alcohol or other violations of law, on 24 hours' notice.

IV. **DIVISION OF GROSS REVENUE:**

A. DAY TIME PERFORMANCES

For a Performer who performs on any weekday (Mon-Sun), arrives and is ready to perform by 12:00 PM and completes a FULL Performance Date, Gross Revenue will be divided 80% to Performer, 20% to Owner. For later arrivals, and less than Full Performance Dates, and those NOT ON SCHEDULE, Gross Revenue will be divided 70% to Performer and 30% to Owner.

B. NIGHT TIME PERFORMANCES

(i) PREMIUM DIVISION: For a Performer who is ON SCHEDULE, arrives and is ready to perform by 6:00 PM and completes a FULL PERFORMANCE DATE, Gross Revenue will be divided 70% to Performer, 30% to Owner.

(ii) STANDARD DIVISION: For a Performer who is ON SCHEDULE, ready to perform after 6:00 PM, and completes a FULL PERFORMANCE DATE, Gross Revenue will be divided 60% to Performer, 40% to Owner.

(iii) REDUCED DIVISION: For a Performer who is NOT ON A SCHEDULE, and/or performs for less than a FULL PERFORMANCE DATE, Gross Revenue will be divided 50% to Performer, 50% to Owner.

*NOTE: The parties may negotiate to reduce the amount Owner retains from Gross Revenue based on business, scheduling and promotional needs.*

C. **VIP AREA OR TABLE USAGE.** Performer shall not be entitled to any portion of any charge imposed on a patron VIP area or table usage.

D. **Club Dollars.** Club Dollars may only be accepted for Dance Fees; they may not be used for, or accepted as, Tips/Gratuities. Performer is not required to accept Club Dollars, but any she does accept will be redeemed at 90% of face value.

Est.1.8.2017

Page 1

## V. PERFORMER'S OBLIGATIONS:

**A. Perform Nude.** The essence of this Contract is Performer's willingness, agreement and intent to Perform Nude to the extent allowed by applicable law.

**B. Dance Fees.** Performer agrees to sell Personal Dances, and specifically agrees to ensure that patrons pay all Dance Fees directly into the Bill Acceptor Machines, Collection Boxes or by handing the Fee directly to a club employee. *Performer is prohibited from allowing patrons to pay Dance Fees directly to her.* This is a material term, breach of which subjects Performer to Termination of Contract and a claim of Conversion.

**C. Market Services.** Performer shall use her skills, artistic talents and best efforts to market and sell nude or semi-nude Personal Dances as permitted by law.

**D. Tips / Gratuities.** Performer owns all tips handed directly to her by patrons. *She is NOT required to share her tips with any club employee, and should report to Owner if anyone demands a portion of her tips.*

**E. Permits.** Performer agrees to maintain all licenses and permits required by law and to know and comply with all related laws and regulations.

**F. Appear on Stage and in Promotions.** Performer agrees to perform on stage on a rotational basis and to participate in promotions held on site during her Performance Date. If Performer chooses to perform in off-site promotions, the Parties will negotiate such performances separately.

**G. Scheduling.** <u>Performer is free to perform if and when she chooses.</u> If Performer chooses a schedule, it shall be based on available performance dates chosen by her one week in advance. Premium Divisions are available for Scheduled Performance Dates. See Paragraph IV. NOTE: PERFORMER MAY TAKE BREAKS AT HER OPTION EXCEPT DURING ROTATIONAL STAGE SHOWS.

**H. Property, Law and Safety.** Performer agrees not to damage Owner's property and to comply with safety and legal requirements, including laws on drugs, alcohol and soliciting or engaging in prostitution.

**I. No Assignment.** This Contract is for Performer's personal skills and artistic talents. She may not assign her rights or obligations, but she may supply a qualified substitute (an experienced entertainer with a valid contract and permits) who will then be responsible for her own scheduling.

**J. Non-Exclusive.** Performer's obligations under this contract are non-exclusive; PERFORMER IS FREE TO PERFORM AT OTHER BUSINESSES.

**K. Control of Performances, Costumes & Music.** Performer has the right to select available music for her stage shows, choose the patrons for whom she performs Personal Dances, and to choose her costumes, provided they are consistent with industry standards for professional entertainers. *Performer also has exclusive control over the character, manner and means of her performances, so long as no law is violated, and the end product (nude or semi-nude entertainment and sale of Personal Dances) is accomplished.*

**L. Intellectual Property.** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

**M. Nature of Business.** Performer recognizes she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive. OWNER PROHIBITS SEXUAL HARASSMENT; PERFORMER SHOULD REPORT UNWELCOME CONDUCT TO CLUB MANAGEMENT OR POSTED COMPLAINT NUMBERS.

## VI. OWNER'S OBLIGATIONS:

**A. Premises/Licenses.** Owner shall maintain the premises and applicable licenses and permits.

**B. Advertising and Music Copyright Fees.** Owner shall pay any music copyright fees, and shall advertise and host promotions in a commercially reasonable manner for the mutual benefit of the parties. Performer may advertise her performance dates on her social media or publically at her own expense.

**C. Dance Records.** Owner will keep an accurate record of Gross Revenue attributable to Performer.

**D. Dance Fees Posted.** Owner will announce the price of Personal Dances so patrons have notice of the Fees and that they are divided between both parties.

**E. Time of Payment.** Performer will receive her Division of Gross Revenue at the end of each performance date and she will be provided a receipt.

**F. Income Tax Records.** Owner will issue Performer a Form 1099 for monies paid to her under this contract. Performer acknowledges she is required by law to pay taxes on all income generated by her, and is required to account separately for all tips given her, as tips are not reported by Performer to Owner and therefore not included in the Form 1099.

**G. Privacy Rights.** Owner will not disclose Performer's personal information to any third party without written permission unless required by law. Owner will notify Performer on receipt of a request for information about Performer unless prohibited by law.

## VII. OTHER CONTRACT TERMS:

**A. No Employment Relationship.** THE PARTIES DISAVOW AN EMPLOYEE-EMPLOYER RELATIONSHIP.

1. PERFORMER ACKNOWLEDGES THAT SHE HAS BEEN PROVIDED WITH A WRITTEN STATEMENT CONCERNING HER RIGHTS IF SHE WERE AN EMPLOYEE AS OPPOSED TO A CONTRACTOR;

2. PERFORMER REPRESENTS THAT SHE CONSIDERED AND REFUSED AN OPTION TO BE AN EMPLOYEE, AND THAT SHE WILL BE PAID UNDER CONTRACT IN LIEU OF WAGES;

3. PERFORMER AGREES THAT AS A CONTRACTOR, OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE EMPLOYEE-RELATED BENEFITS SUCH AS WAGES, MEAL AND BREAK PERIODS, WORKERS COMP, UNEMPLOYMENT, PAID LEAVE, DISABILITY BENEFITS, OR ANY OTHER EMPLOYEE RELATED BENEFITS.

4. PERFORMER AGREES THAT IF THE PARTIES' RELATIONSHIP IS LATER DEEMED TO BE, OR IF SHE REPUDIATES HER CONTRACT AND ASSERTS THAT SHE IS OR SHOULD BE, AN EMPLOYEE, THEN OWNER SHALL IMMEDIATELY CONVERT HER TO AN EMPLOYEE, AND RETAIN 100% OF GROSS REVENUES FROM DANCE SALES AND PAY HER THE LEGAL WAGE AND OTHER BENEFITS REQUIRED BY LAW.

**B. Unjust Enrichment.** Performer acknowledges that if she is later deemed to be an employee entitled to wage and hour benefits during any period under this Contract, it would be unjust for her to retain *both* the monies she collected under

this Contract *and* be paid wage benefits for the same period. Performer therefore agrees that all payments received under the terms of this Contract shall be offset or credited against any wage and hour claim.

**C. Inactive or Voluntary Termination by Notice.** The Contract automatically terminates as "inactive" if Performer has not performed at least once during each 30 day period the contract is in force. Also, either party may voluntarily terminate this Contract on 30 days written notice.

**D. Severability.** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract and not affect the enforceability of the remainder.

**VIII. Arbitration OPTION.**

Congress created Arbitration so that contracting parties could quickly and inexpensively resolve their disputes without the formality of a Court process. Owner, its officers, employees, agents and its related entities agree to resolve any disputes with you by Binding Arbitration. HOWEVER, YOU must AGREE to Arbitration. Read this section carefully and choose your preferred method of resolving any possible future disputes.

*1. IF YOU AGREE TO ARBITRATION*, ALL DISPUTES BETWEEN THE PARTIES AND THEIR AGENTS, WHETHER STATUTORY, CONTRACTUAL OR TORT, WILL BE DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT, AND SHALL BE BEFORE A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES.

*2. IF YOU AGREE TO ARBITRATION*, THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.

*3. OTHER ARBITRATION TERMS. IF YOU AGREE TO ARBITRATION*, EITHER PARTY MAY DEMAND AN EXPERT IN THE ADULT INDUSTRY. THE ARBITRATOR SHALL BE PERMITTED TO AWARD ANY RELIEF AVAILABLE IN A COURT. THE COSTS OF ARBITRATION SHALL BE ASSIGNED AS REQUIRED BY LAW. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE ENFORCEABILITY OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISIONS. ANY ARBITRATION AWARD MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

*4.* AN ARBITRATOR MAY NOT CONSOLIDATE ANY OTHER PERSON'S CLAIMS, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, CONSOLIDATED OR COLLECTIVE PROCEEDING.

*5.* CAUTION: SOME AGENCY CLAIMS MAY NOT BE SUBJECT TO ARBITRATION, INCLUDING FOR EXAMPLE, Federal Claims with the National Labor Relations Board, Department of Labor and Equal Employment Opportunity Claims, as well as many similar state agency claims.

YOUR CHOICE ON ARBITRATION DOES NOT AFFECT YOUR PERFORMANCE DATES, PAYMENTS, OR CONTROL OVER YOUR PERFORMANCES. WHETHER DISPUTES ARE TO BE RESOLVED BY BINDING ARBITRATION IS YOUR SOLE CHOICE TO MAKE.

CHOOSE ONE CAREFULLY! INITIAL ONE BOX!

_EO_ I **AGREE** TO RESOLVE MY DISPUTES BY BINDING ARBITRATION.

_____ I **REJECT** HAVING MY DISPUTES RESOLVED BY BINDING ARBITRATION

*6.* **WAIVER OF CLASS AND COLLECTIVE PROCEEDINGS.** BOTH PARTIES AGREE THAT ANY CLAIM MADE AGAINST THE OTHER SHALL BE IN AN INDIVIDUAL CAPACITY. THIS MEANS YOU AGREE THAT CLAIMS WILL NOT BE MADE AS A CLASS, COLLECTIVE, REPRESENTATIVE OR CONSOLIDATED ACTION.

_EO_ I AGREE TO BRING ANY CLAIMS IN AN INDIVIDUAL CAPACITY.

_____ I REJECT LIMITING MY CLAIMS TO INDIVIDUAL CLAIMS.

LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT AT LEAST AGE 18. PERFORMER HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.

**OWNER:**

DÉJÀ VU-SAN FRANCISCO, LLC

391 Broadway
San Francisco, CA 94133

**MANAGER / ASSISTANT MANGER:**

S. Cooper
**Printed Name**

_[signature]_                    2/7/17
**Signature**                    **Date**

**PERFORMER:**

**I AGREE TO THESE TERMS**

Elaine Gomez Ortega
**Printed Legal Name**

_[signature]_          02/07/17
**Signature**          **Date**

Stage Name  Diana

Address  [redacted]

City  [redacted]

Social Se[redacted]

License / Permit Number _____

# Exhibit 4

# LONG & LEVIT LLP

ATTORNEYS AND COUNSELORS AT LAW

Douglas J. Melton
*Partner*

dmelton@longlevit.com
Direct Dial: 415-438-4493

January 17, 2018

S0301.296

**VIA E-MAIL AND U.S. MAIL**

Shaun Setareh
H. Scott Leviant
Setareh Law Group
9454 Wilshire Blvd., Suite 907
Beverly Hills, CA 90212

Re:   *Gomez-Ortega v. Déjà vu – San Francisco, LLC, et al.*, Case No. 3:14-cv-03616

Greetings:

Defendants DÉJÀ VU – SAN FRANCISCO, LLC and DÉJÀ VU SHOWGIRLS OF SACRAMENTO ("Defendants") hereby demand that Plaintiff Elaine Gomez-Ortega ("Plaintiff") submit any and all claims she has against Defendants—including those alleged in her first amended complaint ("FAC") in the above-referenced litigation—to binding arbitration. Defendants also demand that Plaintiff dismiss the above-referenced litigation as arbitration is the exclusive forum for resolution of all claims and causes of action in the FAC.

This demand is based on Plaintiff's enclosed, fully executed Club/Performer Contracts with each of the Defendants. The contracts contain unambiguous, broadly worded arbitration provisions covering "All disputes between the parties," as well as class action waivers. Plaintiff signed each of the contracts, expressly agreeing to resolve any claims through individual arbitration.

Please advise by close of business Thursday, January 18, 2018 whether Plaintiff will agree to submit to arbitration and dismiss her lawsuit. If we do not hear from you, or should Plaintiff refuse, we will file a motion to compel arbitration for the Court's determination.

Very truly yours,

Douglas J. Melton

Enclosure

## 2016 CLUB/PERFORMER CONTRACT

Sign this Contract ONLY if you genuinely agree with its terms. Read and consider it, seek the advice of counsel or a person you trust to assist you. ALSO, BEFORE SIGNING, CONSIDER OWNER'S SEPARATE OFFER OF EMPLOYMENT.

OWNER, Deja Vu Showgirls-Sacramento LLC, DBA Déjà Vu Showgirls ("Owner") operates a business authorized under zoning and licensing laws to permit nude or semi-nude entertainment on its' premises, and

PERFORMER ("Performer") is in the business of and holds required licenses or permits to market her adult oriented entertainment, and requires a venue which lawfully permits such entertainment, and

THE PARTIES desire to establish the terms of a mutually beneficial business relationship including the Division of Gross Revenue from such entertainment.

THEREFORE, the Parties agree as follows:

I. **TERM**. This Contract begins on signing and ends JANUARY 31, 2017 or when terminated as provided herein.

II. **DEFINITIONS:**

A. "Bill Acceptor Machines or Collection Boxes" are money acceptors located at each booth, Collection Boxes are boxes or purses issued and controlled by Owner for collecting Dance Fees from patrons to ensure that dance fees are segregated and distinguished from "tips."

B. "Personal Dances" are non-stage dances performed individually and sold to a patron for a set Dance Fee.

C. "Dance Fees" are the non-gratuitous set price for Personal Dances. These fees are MANDATORY CHARGES to the patrons as the price for a Personal Dance. They are NOT tips or gratuities.

D. "Gross Revenue" is the total Dance Fees and other sales attributable to Performer. Gross Revenue does not include Tips or Gratuities.

E. "Tips"/"Gratuities" are the amounts over and above the Dance Fee, voluntarily given by a patron and handed directly to Performer; these amounts are the exclusive property of Performer.

F. "Schedule" is an open calendar which owner will publish on Sunday at Opening for Performer's selection of desired Performance Dates.

G. "Scheduled Performance Date" is a date on which Performer has chosen to place herself on the schedule at least one week in advance.

H. "Full Performance Date" refers to a continuous period of time when Performer is present in the club, available and ready to perform for up to 8 hours.

I. "Good Standing" means a Performer who is NOT in breach of her contract, and whose contract is not "inactive "because she has completed at least one Full Performance Date in the current month.

J. Material Breach of Contract <u>by Performer</u> means:

- Violating the law including laws on drugs, alcohol, soliciting or engaging in prostitution;

- Allowing patrons to pay Dance Fees to her directly, i.e., by failing to require patrons to deposit dance fees directly into Bill Acceptor Machines or Collection Boxes or hand dance fees directly to a club employee;

- Failing to use her best efforts to sell Personal Dances; and

- Failing to appear on and complete a Performance Date she chose to schedule.

K. Material Breach of Contract <u>by Owner</u> includes failure to maintain appropriate venue licenses and permits, to advertise in a mutually beneficial manner, and failure to pay performer her contract Division of Gross Revenues.

L. Material Breach/Notice/Remedies. In the event of a Material Breach as defined above, the non-breaching party may (a) impose paragraph III(c) Reduced Division of Gross Receipts (if the breaching party is Performer), or demand Premium Division of Gross Receipts (if the breaching party is Owner) OR (b) terminate the Contract on 3 days written notice or in the case of drug, alcohol or other violations of law, by 24 hour written notice.

III. **DIVISION OF GROSS REVENUE:**

A. PREMIUM DIVISION: For a Performer who is NOT in breach of her contract, and is ON THE SCHEDULE, AND COMPLETES HER FULL PERFORMANCE DATE, Gross Revenues will be divided 60% to Performer and 40% to Owner.

B. STANDARD DIVISION: For a Performer who is NOT ON THE SCHEDULE and also NOT IN BREACH of her Contract, Owner shall retain the first $60.00 in Gross Revenues from dance sales, and thereafter Gross Revenues will be divided on a 50/50% basis between Owner and Performer.

C. REDUCED DIVISION: Owner shall retain the first $160 in Gross Revenues from Performer's dance sales in the event Performer IS IN BREACH (i.e., for failing to appear AS SCHEDULED), and hereafter, Gross Revenues will be divided on a 50/50 % basis between Owner and Performer.
*NOTE: The parties may negotiate to reduce the amount Owner retains from Gross Revenue based on business, scheduling and promotional needs.*

Page 1

IV. **PERFORMER'S OBLIGATIONS**:

A.    **Dance Fees.** Performer agrees to sell Personal Dances, and specifically agrees to ensure that patrons pay all Dance Fees by depositing the money directly into the Bill Acceptor Machines, Collection Boxes or by handing the money directly to a club employee. *Performer is prohibited from allowing patrons to pay Dance Fees directly to her.* This is a material term, breach of which subjects Performer to termination of contract and a claim of Conversion.

B.    **Market Services.** Performer shall use her skills, artistic talents and her best efforts to market and sell nude or semi nude as permitted by law.

C.    **Tips / Gratuities.** Performer shall own all tips handed directly to her by patrons. *Performer is NOT required share her tips with any club employee. Performer should report to Owner if any one demands a portion of her tips.*

D.    **Permits.** Performer agrees to maintain all licenses and permits required by laws governing her entertainment services and to know and comply with all related laws and regulations.

E.    **Appear on Stage and in Promotions.** Performer agrees to appear on stage on a rotational basis and to participate in promotions held on site during her Performance Date. If Performer chooses to perform in off-site promotions, the Parties will negotiate such performances separately.

F.    **Scheduling.** <u>Performer is free to perform if and when she chooses.</u> If Performer chooses to place herself on the schedule, it shall be based on available performance dates and set one week in advance. Premium Divisions are available for Scheduled Performance Dates. See paragraph III. NOTE: PERFORMER MAY TAKE BREAK PERIODS AT HER OPTION EXCEPT DURING SCHEDULED STAGE SHOWS.

G.    **Respect Property, Law and Safety.** Performer agrees not to damage Owner's property and to comply with safety and legal requirements, including laws on drugs, alcohol and soliciting or engaging in prostitution.

H.    **No Assignment.** This Contract is for Performer's personal skills and artistic talents. She may not assign her rights or obligations, but she may supply a qualified substitute (an experienced entertainer with a valid contract and permits) who will then be responsible for her own scheduling.

I.    **Non-Exclusive.** Performer's obligations under this contract are non-exclusive; PERFORMER IS FREE TO PERFORM AT OTHER BUSINESSES.

J.    **Control of Performances, Costumes & Music.** Performer has the right to select available music for her stage shows, choose the patrons for whom she performs Personal Dances, and to choose her costumes, provided they are consistent with industry standards for professional entertainers. Performer also has exclusive control over the character, manner and means of her performances, so long as no law is violated, and the end product (nude or semi-nude entertainment and sale of Personal Dances) is accomplished.

K.    **Intellectual Property.** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

L.    **Nature of Business.** Performer recognizes she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive. OWNER PROHIBITS SEXUAL HARASSMENT; PERFORMER SHOULD REPORT UNWELCOME CONDUCT TO CLUB MANAGEMENT.

V.    **OWNER'S OBLIGATIONS:**

A.    **Premises/Licenses.** Owner shall maintain the premises and all applicable licenses and permits.

B.    **Advertising and Music Copyright Fees.** Owner shall pay any music copyright fees, and shall advertise and host promotions in a commercially reasonable manner for the mutual benefit of the parties Performer may advertise her performance dates on her social media or publically at her own expense.

C.    **Dance Records.** Owner will keep an accurate record of Gross Revenue attributable to Performer.

D.    **Fees for Personal Dances.** Owner will announce the price for Personal Dances so patrons have notice of the Fees and that they are divided between both parties.

E.    **Time of Payment.** Performer will receive her Division of Gross Revenue at the end of each performance date and she will be provided a receipt.

F.    **Income Tax Records.** Owner will issue Performer a Form 1099 for monies paid to her under this contract. Performer acknowledges she is required by law to pay taxes on all income generated by her, and required to account separately for all tips given to her, as tips are not reported to Owner and not included in the Form 1099.

G.    **Privacy Rights.** Owner will not disclose Performer's personal information to any third party without written permission unless required by law. Owner will notify Performer on receipt of any request for information or documents concerning Performer unless prohibited by law.

VI. **OTHER CONTRACT TERMS:**

A.    **No Employment Relationship.** THE PARTIES DISAVOW AN EMPLOYEE-EMPLOYER RELATIONSHIP.

1)    PERFORMER ACKNOWLEDGES THAT SHE HAS BEEN PROVIDED WITH A WRITTEN STATEMENT CONCERNING HER RIGHTS IF SHE WERE AN EMPLOYEE AS OPPOSED TO A CONTRACTOR;

2)    PERFORMER REPRESENTS THAT SHE CONSIDERED AND REFUSED AN OPTION TO BE AN EMPLOYEE, AND THAT SHE WILL BE PAID UNDER CONTRACT IN LIEU OF WAGES;



Page 2

3) PERFORMER ACKNOWLEDGES AND AGREES THAT AS A CONTRACTOR, OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE ANY EMPLOYEE-RELATED BENEFITS, SUCH AS WAGES, MEAL AND BREAK PERIODS, WORKERS COMPENSATION, UNEMPLOYMENT, PAID LEAVE, DISABILITY BENEFITS, OR ANY OTHER EMPLOYEE LIKE BENEFITS.

4) PERFORMER AGREES THAT IF THE PARTIES' RELATIONSHIP IS LATER DEEMED TO BE, OR IF SHE REPUDIATES HER CONTRACT AND ASSERTS THAT SHE IS OR SHOULD BE, AN EMPLOYEE, THEN OWNER SHALL IMMEDIATELY CONVERT PERFORMER TO AN EMPLOYEE, AND RETAIN 100% OF GROSS REVENUES FROM DANCE SALES AND PAY PERFORMER THE LEGAL WAGE AND OTHER BENEFITS REQUIRED BY LAW.

B. **Unjust Enrichment.** Performer acknowledges that if she is later deemed to be an employee entitled to wage and hour benefits during any period under this Contract, it would be unjust for her to retain *both* the monies she collected under this contract *and* be paid wage benefits for the same period. Performer therefore agrees that all payments which she received under the terms of this Contract shall be offset or credited against any wage and hour claim.

C. **Inactive or Voluntary Termination by Notice.** This contract shall be terminated as "inactive" if Performer has not appeared to perform on at least 1 performance date during each 30 day period the contract is in force. Either party may voluntarily terminate this Contract on 30 days written notice.

D. **Severability.** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract and not affect the enforceability of the remainder.

E. BINDING ARBITRATION. ALL DISPUTES BETWEEN THE PARTIES, WHETHER STATUTORY, CONTRACTUAL OR TORT, SHALL BE DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT, AND SHALL BE BEFORE A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES. THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. EITHER PARTY MAY DEMAND AN EXPERT IN THE ADULT INDUSTRY. SUBJECT ONLY TO THE PROVISIONS IN THIS PARAGRAPH AND IN PARAGRAPH VI (E) THE ARBITRATOR SHALL BE PERMITTED TO AWARD ANY RELIEF AVAILABLE IN A COURT. THE COSTS OF ARBITRATION SHALL BE ASSIGNED AS REQUIRED BY LAW. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE ENFORCEABILITY OF THIS CONTRACT. ANY AWARD MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION. AN ARBITRATOR MAY NOT CONSOLIDATE ANY OTHER PERSON'S CLAIMS, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, CONSOLIDATED OR COLLECTIVE PROCEEDING. NOTE: SOME AGENCY CLAIMS MAY NOT BE SUBJECT TO ARBITRATION.

E. WAIVER OF CLASS AND COLLECTIVE PROCEEDINGS. BOTH PARITES AGREE THAT ANY CLAIM MADE AGAGINST THE OTHER SHALL BE IN AN INDIVIDUAL CAPACITY, NOT A CLASS, COLLECTIVE, REPRESENTATIVE or CONSOLIDATED ACTION.

F. LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT AT LEAST AGE 18. PERFORMER HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.

OWNER:

Deja Vu Showgirls-Sacramento LLC,
11252 Trade Center Dr.
Rancho Cordova Ca. 95742

Manager / Assistant Manger
*Brandon Herchelroath*
Printed Name

Signature
Est.123015    8/13/16

I AGREE TO THESE TERMS

*Elaine Gomez*
Printed Legal Name

Signature                     08/16
                              Date

Stage Name
Address
City
Social Sec
License / Permit Number

Page 3

## 2017-2018 CLUB/PERFORMER CONTRACT

Sign this Contract ONLY if you genuinely agree with its terms. Read and consider it, seek the advice of counsel or a person you trust to assist you. ALSO, BEFORE SIGNING, CONSIDER OWNER'S SEPARATE OFFER OF EMPLOYMENT.

OWNER, DÉJÀ VU-SAN FRANCISCO, LLC ("Owner") operates a business authorized under zoning and licensing laws to permit nude or semi-nude entertainment on its' premises, and PERFORMER ("Performer") is in the business of and holds required licenses or permits to market her adult oriented entertainment, and requires a venue which lawfully permits such entertainment, and

THE PARTIES desire to establish the terms of a mutually beneficial business relationship including the Division of Gross Revenue from such entertainment.

THEREFORE, the Parties agree as follows:

I. **TERM.** This Contract begins on signing and ends JANUARY 31, 2018 or when terminated as provided herein.

II. **DEFINITIONS:**

A. **"Bill Acceptor Machines or Collection Boxes."** The Machines are money acceptors located at each booth and the Collection Boxes are receptacles issued by Owner for the collection of Dance Fees from patrons to ensure that Dance Fees are segregated and distinguished from "tips."

B. **"Personal Dances"** are non-stage dances performed individually and sold to a patron for a set Dance Fee.

C. **"Dance Fees"** are the non-gratuitous set price for Personal Dances. These fees are MANDATORY CHARGES to the patrons as the price for a Personal Dance. They are NOT tips or gratuities.

D. **"Gross Revenue"** is the total Dance Fees and other sales attributable to Performer. Gross Revenue does not include Tips or Gratuities.

E. **"Tips"/"Gratuities"** are the amounts over and above the Dance Fee, voluntarily given by a patron and handed directly to Performer; they are the exclusive property of Performer.

F. **"Schedule"** is an open calendar which owner will publish every Sunday at opening for Performer's selection of desired Performance Dates.

G. **"Scheduled Performance Date"** is a date on which Performer has chosen to place herself on the schedule one week in advance.

H. **"Full Performance Date"** is a continuous period of time when Performer is present, available and ready to perform; which time period consists of at least SIX hours.

I. **"Good Standing"** means a Performer who is NOT in breach of her contract, and whose contract has been kept "active" in the system by performing at least one Full Performance Date in the current month.

III. **BREACH OF CONTRACT**

A. Breach of Contract by Performer:

- Violating the law including laws on drugs, alcohol, soliciting or engaging in prostitution;

- Allowing patrons to pay Dance Fees to you directly, i.e., by failing to require patrons to deposit Dance Fees directly into Bill Acceptor Machines or Collection Boxes or hand them directly to a club employee;

- Failing to use your best efforts to sell Personal Dances;

- Failing to appear on and complete a Performance Date you chose to schedule, and

- Engaging in fighting and/or bullying.

B. Breach of Contract by Owner includes failure to maintain appropriate licenses and permits, failure to advertise in a mutually beneficial manner, and failure to pay performer her contract Division of Gross Revenues.

C. Breach Notice/Remedies. In the event of a Material Breach, the non-breaching party may (a) impose paragraph IV(B)iii Reduced Division of Gross Receipts (if the breaching party is Performer), or demand Premium Division of Gross Receipts (if the breaching party is Owner) OR (b) terminate the Contract on 3 days written notice or in the case of drug, alcohol or other violations of law, on 24 hours' notice.

IV. **DIVISION OF GROSS REVENUE:**

A. **DAY TIME PERFORMANCES**

For a Performer who performs on any weekday (Mon-Sun), arrives and is ready to perform by 12:00 PM and completes a FULL Performance Date, Gross Revenue will be divided 80% to Performer, 20% to Owner. For later arrivals, and less than Full Performance Dates, and those NOT ON SCHEDULE, Gross Revenue will be divided 70% to Performer and 30% to Owner.

B. **NIGHT TIME PERFORMANCES**

(i) **PREMIUM DIVISION:** For a Performer who is ON SCHEDULE, arrives and is ready to perform by 6:00 PM and completes a FULL PERFORMANCE DATE, Gross Revenue will be divided 70% to Performer, 30% to Owner.

(ii) **STANDARD DIVISION:** For a Performer who is ON SCHEDULE, ready to perform after 6:00 PM, and completes a FULL PERFORMANCE DATE, Gross Revenue will be divided 60% to Performer, 40% to Owner.

(iii) **REDUCED DIVISION:** For a Performer who is NOT ON A SCHEDULE, and/or performs for less than a FULL PERFORMANCE DATE, Gross Revenue will be divided 50% to Performer, 50% to Owner.

*NOTE: The parties may negotiate to reduce the amount Owner retains from Gross Revenue based on business, scheduling and promotional needs.*

C. **VIP AREA OR TABLE USAGE.** Performer shall not be entitled to any portion of any charge imposed on a patron VIP area or table usage.

D. **Club Dollars.** Club Dollars may only be accepted for Dance Fees; they may not be used for, or accepted as, Tips/Gratuities. Performer is not required to accept Club Dollars, but any she does accept will be redeemed at 90% of face value.

Est.1.8.2017

Page 1

V.   **PERFORMER'S OBLIGATIONS:**

**A. Perform Nude.** The essence of this Contract is Performer's willingness, agreement and intent to Perform Nude to the extent allowed by applicable law.

**B. Dance Fees.** Performer agrees to sell Personal Dances, and specifically agrees to ensure that patrons pay all Dance Fees directly into the Bill Acceptor Machines, Collection Boxes or by handing the Fee directly to a club employee. *Performer is prohibited from allowing patrons to pay Dance Fees directly to her.* **This is a material term, breach of which subjects Performer to Termination of Contract and a claim of Conversion.**

**C. Market Services.** Performer shall use her skills, artistic talents and best efforts to market and sell nude or semi-nude Personal Dances as permitted by law.

**D. Tips / Gratuities.** Performer owns all tips handed directly to her by patrons. *She is NOT required to share her tips with any club employee, and should report to Owner if anyone demands a portion of her tips.*

**E. Permits.** Performer agrees to maintain all licenses and permits required by law and to know and comply with all related laws and regulations.

**F. Appear on Stage and in Promotions.** Performer agrees to perform on stage on a rotational basis and to participate in promotions held on site during her Performance Date. If Performer chooses to perform in off-site promotions, the Parties will negotiate such performances separately.

**G. Scheduling.** <u>Performer is free to perform if and when she chooses.</u> If Performer chooses a schedule, it shall be based on available performance dates chosen by her one week in advance. **Premium Divisions are available for Scheduled Performance Dates. See Paragraph IV. NOTE: PERFORMER MAY TAKE BREAKS AT HER OPTION EXCEPT DURING ROTATIONAL STAGE SHOWS.**

**H. Property, Law and Safety.** Performer agrees not to damage Owner's property and to comply with safety and legal requirements, including laws on drugs, alcohol and soliciting or engaging in prostitution.

**I. No Assignment.** This Contract is for Performer's personal skills and artistic talents. She may not assign her rights or obligations, but she may supply a qualified substitute (an experienced entertainer with a valid contract and permits) who will then be responsible for her own scheduling.

**J. Non-Exclusive.** Performer's obligations under this contract are non-exclusive; PERFORMER IS FREE TO PERFORM AT OTHER BUSINESSES.

**K. Control of Performances, Costumes & Music.** Performer has the right to select available music for her stage shows, choose the patrons for whom she performs Personal Dances, and to choose her costumes, provided they are consistent with industry standards for professional entertainers. *Performer also has exclusive control over the character, manner and means of her performances, so long as no law is violated, and the end product (nude or semi-nude entertainment and sale of Personal Dances) is accomplished.*

**L. Intellectual Property.** Performer shall retain all intellectual property rights to her performances, stage names and likeness unless assigned in writing.

**M. Nature of Business.** Performer recognizes she may be subjected to nudity, sexually explicit language and depictions of explicit conduct. Performer represents that she does not find such sights or sounds offensive. OWNER PROHIBITS SEXUAL HARASSMENT; PERFORMER SHOULD REPORT UNWELCOME CONDUCT TO CLUB MANAGEMENT OR POSTED COMPLAINT NUMBERS.

VI.   **OWNER'S OBLIGATIONS:**

**A. Premises/Licenses.** Owner shall maintain the premises and applicable licenses and permits.

**B. Advertising and Music Copyright Fees.** Owner shall pay any music copyright fees, and shall advertise and host promotions in a commercially reasonable manner for the mutual benefit of the parties. Performer may advertise her performance dates on her social media or publically at her own expense.

**C. Dance Records.** Owner will keep an accurate record of Gross Revenue attributable to Performer.

**D. Dance Fees Posted.** Owner will announce the price of Personal Dances so patrons have notice of the Fees and that they are divided between both parties.

**E. Time of Payment.** Performer will receive her Division of Gross Revenue at the end of each performance date and she will be provided a receipt.

**F. Income Tax Records.** Owner will issue Performer a Form 1099 for monies paid to her under this contract. Performer acknowledges she is required by law to pay taxes on all income generated by her, and is required to account separately for all tips given her, as tips are not reported by Performer to Owner and therefore not included in the Form 1099.

**G. Privacy Rights.** Owner will not disclose Performer's personal information to any third party without written permission unless required by law. Owner will notify Performer on receipt of a request for information about Performer unless prohibited by law.

VII.   **OTHER CONTRACT TERMS:**

**A.   No Employment Relationship. THE PARTIES DISAVOW AN EMPLOYEE-EMPLOYER RELATIONSHIP.**

1. PERFORMER ACKNOWLEDGES THAT SHE HAS BEEN PROVIDED WITH A WRITTEN STATEMENT CONCERNING HER RIGHTS IF SHE WERE AN EMPLOYEE AS OPPOSED TO A CONTRACTOR;

2. PERFORMER REPRESENTS THAT SHE CONSIDERED AND REFUSED AN OPTION TO BE AN EMPLOYEE, AND THAT SHE WILL BE PAID UNDER CONTRACT IN LIEU OF WAGES;

3. PERFORMER AGREES THAT AS A CONTRACTOR, OWNER WILL NOT REIMBURSE BUSINESS EXPENSES OR PROVIDE EMPLOYEE-RELATED BENEFITS SUCH AS WAGES, MEAL AND BREAK PERIODS, WORKERS COMP, UNEMPLOYMENT, PAID LEAVE, DISABILITY BENEFITS, OR ANY OTHER EMPLOYEE RELATED BENEFITS.

4. PERFORMER AGREES THAT IF THE PARTIES' RELATIONSHIP IS LATER DEEMED TO BE, OR IF SHE REPUDIATES HER CONTRACT AND ASSERTS THAT SHE IS OR SHOULD BE, AN EMPLOYEE, THEN OWNER SHALL IMMEDIATELY CONVERT HER TO AN EMPLOYEE, AND RETAIN 100% OF GROSS REVENUES FROM DANCE SALES AND PAY HER THE LEGAL WAGE AND OTHER BENEFITS REQUIRED BY LAW.

**B. Unjust Enrichment.** Performer acknowledges that if she is later deemed to be an employee entitled to wage and hour benefits during any period under this Contract, it would be unjust for her to retain *both* the monies she collected under

this Contract *and* be paid wage benefits for the same period. Performer therefore agrees that all payments received under the terms of this Contract shall be offset or credited against any wage and hour claim.

C. **Inactive or Voluntary Termination by Notice.** The Contract automatically terminates as "inactive" if Performer has not performed at least once during each 30 day period the contract is in force. Also, either party may voluntarily terminate this Contract on 30 days written notice.

D. **Severability.** Any unenforceable portion of this Contract, to the extent possible, shall be severable from this Contract and not affect the enforceability of the remainder.

VIII. Arbitration <u>OPTION.</u>

Congress created Arbitration so that contracting parties could quickly and inexpensively resolve their disputes without the formality of a Court process. Owner, its officers, employees, agents and its related entities agree to resolve any disputes with you by Binding Arbitration. HOWEVER, YOU must AGREE to Arbitration. Read this section carefully and choose your preferred method of resolving any possible future disputes.

1. *IF YOU AGREE TO ARBITRATION,* ALL DISPUTES BETWEEN THE PARTIES AND THEIR AGENTS, WHETHER STATUTORY, CONTRACTUAL OR TORT, WILL BE DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT, AND SHALL BE BEFORE A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES.

2. *IF YOU AGREE TO ARBITRATION,* <u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.</u>

3. *OTHER ARBITRATION TERMS. IF YOU AGREE TO ARBITRATION,* EITHER PARTY MAY DEMAND AN EXPERT IN THE ADULT INDUSTRY. THE ARBITRATOR SHALL BE PERMITTED TO AWARD ANY RELIEF AVAILABLE IN A COURT. THE COSTS OF ARBITRATION SHALL BE ASSIGNED AS REQUIRED BY LAW. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE ENFORCEABILITY OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISIONS. ANY ARBITRATION AWARD MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

4. AN ARBITRATOR MAY NOT CONSOLIDATE ANY OTHER PERSON'S CLAIMS, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, CONSOLIDATED OR COLLECTIVE PROCEEDING.

5. CAUTION: SOME AGENCY CLAIMS MAY NOT BE SUBJECT TO ARBITRATION, INCLUDING FOR EXAMPLE, Federal Claims with the National Labor Relations Board, Department of Labor and Equal Employment Opportunity Claims, as well as many similar state agency claims.

YOUR CHOICE ON ARBITRATION DOES NOT AFFECT YOUR PERFORMANCE DATES, PAYMENTS, OR CONTROL OVER YOUR PERFORMANCES. WHETHER DISPUTES ARE TO BE RESOLVED BY BINDING ARBITRATION IS YOUR SOLE CHOICE TO MAKE.

CHOOSE ONE CAREFULLY! INITIAL ONE BOX!

__[initialed]__ I <u>AGREE</u> TO RESOLVE MY DISPUTES BY BINDING ARBITRATION.

_____ I <u>REJECT</u> HAVING MY DISPUTES RESOLVED BY BINDING ARBITRATION

6. <u>WAIVER OF CLASS AND COLLECTIVE PROCEEDINGS.</u> BOTH PARTIES AGREE THAT ANY CLAIM MADE AGAINST THE OTHER SHALL BE IN AN INDIVIDUAL CAPACITY. THIS MEANS YOU AGREE THAT CLAIMS WILL NOT BE MADE AS A CLASS, COLLECTIVE, REPRESENTATIVE OR CONSOLIDATED ACTION.

__[initialed]__ I AGREE TO BRING ANY CLAIMS IN AN INDIVIDUAL CAPACITY.

_____ I REJECT LIMITING MY CLAIMS TO INDIVIDUAL CLAIMS.

LEGAL AGE: THIS CONTRACT IS VOID IF PERFORMER IS NOT AT LEAST AGE 18. PERFORMER HAS PROVIDED VALID IDENTIFICATION VERIFYING HER AGE.

OWNER:

DÉJÀ VU-SAN FRANCISCO, LLC

391 Broadway
San Francisco, CA 94133

MANAGER / ASSISTANT MANGER:

_S. Coory_
Printed Name

_[signature]_                    _2/7/17_
Signature                          Date

PERFORMER:

I AGREE TO THESE TERMS

_Elaine Gomez Ortega_
Printed Legal Name

_Elaine Gomez_          _02/07/17_
Signature                    Date

Stage Name _Diana_

Address ███████

City _M███_

Social Se███

License / Permit Number _____